FILED'10 MAR 29 15:51 USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

ERICK T. MOORE,                               08-CV-1007-BR

      Plaintiff,                        OPINION AND ORDER

v.

JOHN E. POTTER, Postmaster
General,

      Defendant.

**ELIZABETH FARRELL OBERLIN**
P.O. Box 3614
Hillsboro, OR  97123
(503) 277-2087

      Attorney for Plaintiff


**DWIGHT C. HOLTON**
United States Attorney
**KATHERINE C. LORENZ**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1039

      Attorneys for Defendant

1  -  OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant John E. Potter's Motion (#27) for Summary Judgment.  For the reasons that follow, the Court **GRANTS** Defendant's Motion (#27) for Summary Judgment in its entirety and **DISMISSES** this matter **with prejudice.**

## FACTUAL BACKGROUND

The following facts are undisputed or, if disputed, are viewed in the light most favorable to Plaintiff.

Plaintiff Erick T. Moore is an African-American resident of the State of Oregon who began working for the United States Postal Service (USPS) in 1993 and at all relevant times remained a USPS employee.  Defendant John E. Potter is the Postmaster General of the USPS.

In 2005 Plaintiff attended a roundtable discussion held by USPS and the Western Regional Vice President of USPS, Sylvester Black, to discuss complaints of race discrimination.  Portland District Manager Dallas Keck, Portland Postmaster Shawneen Betha, and management-level employees Kim Anderson and Beverly Spina-Denson also attended the roundtable.[1]  Plaintiff contends the Portland District has a history of race discrimination that led

---

[1] At the time, these positions were held by the named persons.

2  -  OPINION AND ORDER

to the roundtable discussion at which Plaintiff; Harlan Henry,
another African-American postal worker; and others complained
about race discrimination.

Between September 2006 and April 2007, USPS offered
Plaintiff multiple management-training opportunities.  In
September 2006 Plaintiff was enrolled in the Associate
Supervisor's Training Program (ASP), which is a 16-week program
designed to train employees to perform supervisory duties.
Management candidates begin ASP with a two-week, classroom-based
training that culminates in written examinations.  Plaintiff
failed his written tests and did not advance to the on-site
training.  USPS subsequently assigned Plaintiff as a temporary
supervisor (known as a 204-b Supervisor) for additional training
to accommodate Plaintiff's stated preference for hands-on
training.  Plaintiff attended training at the Creston and Cherry
Blossom Stations between October and December 2006.  In January
2007 Plaintiff was assigned to his second ASP.  Plaintiff began
the classroom-based portion of his ASP assignment at the Park
Rose Station, which was close to his home.  Plaintiff passed his
written tests, and Karen Sharp, the ASP Coordinator, assigned
Plaintiff to finish the bulk of the program at the Oak Grove
Station 19.5 miles from Plaintiff's home.

Between February 12 and March 30, 2007, Plaintiff's ASP
trainer, Shelley Lifto, completed five On-Site Instruction

Reviews (OSIRs) of Plaintiff, which entails assignment of numerical scores between 1 and 4 for performance in 13 categories and narrative feedback on the trainee's performance. According to the evaluations, Plaintiff did not satisfactorily perform a number of tasks assigned to him, was unprepared for meetings, and was tardy to certain meetings and shifts. Plaintiff acknowledged at his deposition that the information in his first two OSIR evaluations for the weeks of February 12 through February 23, 2007, is accurate. Plaintiff, however, contends the third, fourth, and fifth OSIRs are inaccurate in that he did not meet expectations because he did not receive adequate training from Lifto and his Training Coach, Anthony Spina-Denson, who was also the manager of the Oak Grove Station. Plaintiff attested he made multiple requests for additional training with respect to areas in which he needed to improve as reflected in his OSIRs, but he was not given that additional training.

Plaintiff complained to Keck and Charles Collins, Diversity Coordinator, that he was being treated "differently" and "unfairly" by Lifto and Spina-Denson during the ASP. Plaintiff, however, did not expressly assert racial discrimination.

During Plaintiff's participation in the ASP at the Oak Grove Station, Lifto and Spina-Denson made the following statements on which Plaintiff relies to support his claims: (1) Spina-Denson told Plaintiff in one of their first meetings that he didn't have

to pass Plaintiff; (2) Lifto told Plaintiff that he would have to "kiss a little butt" in order to pass the program; (3) in response to Plaintiff questioning Spina-Denson's mail-counting method, Spina-Denson told Plaintiff that he was "messing with [Spina-Denson's] money"; and (4) in response to questioning by Plaintiff, Spina-Denson put his hand to his head and stated, "You just ask too many questions."

Plaintiff cites his "belief" that there was a clear lack of upward mobility for African Americans in the Portland District; that Spina-Denson did not want Plaintiff to have the same advancement opportunities as Spina-Denson; that "the Postal Service is analogous to a plantation with privileged African-American employees who keep other African-Americans from encroaching on their positions; and that five members of management [Douglas Batchelor, Human Resources; Keck; Beverly Spina-Denson; Kim Anderson; and Shawneen Betha, Portland Postmaster] conspired against him to ensure he failed the ASP."

Defendant, in turn, provides numerous emails and correspondence from Plaintiff's ASP Trainer, Coach, and Coordinator documenting their concerns about Plaintiff's progress and performance in the ASP. Defendant provides an email from USPS HR Specialist and ASP Coordinator Karen Sharp in which she responded to Plaintiff's complaints about his third OSIR evaluation and suggested six specific additional practices to

help him improve his evaluation scores.  Defendant also provides emails from Lifto to Spina-Denson and to Betha detailing additional mistakes made by Plaintiff and areas that needed improvement.  Spina-Denson also sent emails to Lifto regarding Plaintiff's tardiness, unpreparedness, and failure to follow instructions.

Plaintiff was removed from the ASP on April 4, 2007, by the ASP Advisory Board on the stated ground that he was not making the necessary progress to justify his continued participation in the program.

## PROCEDURAL BACKGROUND

Plaintiff filed a formal complaint of race discrimination with the USPS Equal Employment Opportunity Department.  That case was closed on December 21, 2004.  Plaintiff does not contend his first USPS EEO complaint was the basis for any discrimination or retaliation by Defendant.

On July 11, 2007, Plaintiff filed a second formal complaint with the USPS EEO alleging race discrimination and retaliation.

Plaintiff filed his Complaint in this Court on August 27, 2008, seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5, *et seq.*, for unlawful race discrimination based on disparate treatment and hostile work environment and for retaliation for engaging in protected

6  -  OPINION AND ORDER

activity.  Defendant filed his Answer on December 1, 2008.

The Court heard oral argument on Defendant's Motion on January 5, 2010, and requested the parties to file supplemental briefs.  On February 1, 2010, the Court took the Motion under advisement.

## STANDARDS

### I.  Summary Judgment.

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings to show there is a genuine issue of material fact.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957

(9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.,* 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.,* 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.,* 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.* "[W]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can be resolved through a searching inquiry-one that is most appropriately conducted by the fact-finder, upon a full record." *Schnidrig v. Columbia machine, Inc.,* 80 F.3d 1406, 1410 (9th Cir.)(citations omitted), *cert. denied,* 519 U.S. 927 (1996).

## II.  Title VII.

It is unlawful under Title VII for an employer to

"discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).

When a plaintiff establishes a *prima facie* case of discrimination, it creates a presumption "that the plaintiff's employer undertook the challenged employment action because of the plaintiff's race."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  To rebut the presumption, the defendant "must produce admissible evidence showing that the defendant undertook the challenged employment action for a 'legitimate, nondiscriminatory reason.'"  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant produces that evidence, "the presumption of discrimination 'drops out of the picture' and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c)."  *Cornwell*, 439 F.3d at 1028 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).  Thus,

> In the context of employment discrimination law under Title VII, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's race.

*Cornwell*, 439 F.3d at 1028 (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

9  -  OPINION AND ORDER

To meet the standard of proof required by Rule 56(c), a plaintiff may offer direct or circumstantial evidence "'that a discriminatory reason more likely motivated the employer' to make the challenged employment decision." *Cornwell*, 439 F.3d at 1028 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Alternatively, a plaintiff may offer evidence "that the employer's proffered explanation is unworthy of credence." *Cornwell*, 439 F.3d at 1028 (quoting *Burdine*, 450 U.S. at 256). In other words, a plaintiff may defeat a defendant's motion for summary judgment "by offering proof that the employer's legitimate, nondiscriminatory reason is actually a pretext for racial discrimination." *Cornwell*, 439 F.3d at 1028 (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004)).

A plaintiff, however, "may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action." *Cornwell*, 439 F.3d at 1028 n.6 (citing *Wallis*, 26 F.3d at 890, and *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986)). In addition, a plaintiff cannot establish a genuine issue of material fact exists "by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted." *Cornwell*, 439 F.3d at 1028, n.6 (citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267,

10 - OPINION AND ORDER

270 (9th Cir. 1996)(despite the plaintiff's claims that she had
performed her job well, "an employee's subjective personal
judgments of her competence alone do not raise a genuine issue of
material fact").

## DISCUSSION

Defendant moves for summary judgment on the following
grounds:  (1) Plaintiff has not met his burden to establish a
*prima facie* case of race discrimination under Title VII on the
basis of either a hostile work environment or disparate
treatment; (2) even if Plaintiff established a *prima facie* case
with respect to race discrimination, Plaintiff has not met his
burden to show Defendant's legitimate, nondiscriminatory bases
for removing Plaintiff from the ASP were merely pretextual; (3)
Plaintiff has not met his burden to establish a *prima facie* case
of retaliation for engaging in protected activity; and (4) even
if Plaintiff establishes a *prima facie* case with respect to his
claim of retaliation, Plaintiff has not met his burden to show
Defendant's legitimate, nondiscriminatory bases for removing
Plaintiff from the ASP were merely pretextual.

## I.   Race Discrimination.

Defendant contends Plaintiff has not provided sufficient
evidence to establish a *prima facie* case of race discrimination
under Title VII on the basis of either a hostile work environment

11 - OPINION AND ORDER

or disparate treatment.  In the alternative, Defendant contends
Plaintiff has not met his burden to show that Defendant's
legitimate, nondiscriminatory bases for removing Plaintiff from
the ASP were merely pretextual.

### A.   Hostile Work Environment.

Plaintiff contends Defendant subjected Plaintiff to a
hostile work environment during the approximately five weeks that
he received on-site training in the ASP under Lifto and Spina-
Denson at the Oak Grove Station.

To establish a *prima facie* case of race discrimination under
Title VII based on a hostile work environment, a plaintiff must
establish (1) he was "subjected to verbal or physical conduct"
because of his race, (2) "the conduct was unwelcome," and
(3) "the conduct was sufficiently severe or pervasive to alter
the conditions of [the plaintiff's] employment and create an
abusive work environment." *Manatt v. Bank of Am., NA,* 339 F.3d
792, 798 (9th Cir. 2003)(quoting *Kang v. U. Lim Am., Inc.,* 296
F.3d 810, 817 (9th Cir. 2002)).

Title VII does not constitute a "general civility code."
*Manatt,* 339 F.3d at 798 (quoting *Faragher,* 524 U.S. at 788).  The
Supreme Court has concluded a hostile work environment exists
when the workplace is permeated with discriminatory intimidation,
ridicule, and insult. *Faragher v. Boca Raton,* 524 U.S. 775, 786
(1998).  "[S]imple teasing, offhand comments, and isolated

incidents (unless extremely serious) will not amount to
discriminatory changes in the 'terms and conditions of
employment.'" *Id.* (internal citation omitted). *See also Jordan
v. Clark*, 847 F.2d 1368, 1374-75 (9th Cir. 1988)(court held no
hostile work environment when "off-color" jokes were told in
workplace).

A plaintiff must show "the work environment was both
subjectively and objectively hostile." *McGinest*, 360 F.3d at
1113-14.  To determine objective hostility, courts consider the
"frequency of discriminatory conduct; its severity; whether it is
physically threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with an
employee's work performance." *Id.* at 1114 (quoting *Nichols v.
Azteca Rest. Enter.*, 256 F.3d 864, 872 (9th Cir. 2001)).

As noted, the verbal conduct Plaintiff identifies as
creating a hostile work environment consists of four statements:
(1) Spina-Denson told Plaintiff that he did not have to pass
Plaintiff; (2) Lifto told Plaintiff that he would have to "kiss a
little butt" to pass the program; (3) in response to Plaintiff
questioning Spina-Denson's mail-counting method, Spina-Denson
told Plaintiff he was "messing with [Spina-Denson's] money"; and
(4) in response to questioning by Plaintiff, Spina-Denson put his
hand to his head and stated, "You just ask too many questions."
Plaintiff testified at his deposition that these were the only

13 - OPINION AND ORDER

comments made by any USPS employees that created the alleged hostile work environment.

Defendant contends these statements are neither racial in nature nor hostile. Moreover, Defendant contends these comments are "occasional, isolated, sporadic or trivial" as opposed to severe and pervasive. *See Manatt*, 339 F.3d at 798. Defendant notes Plaintiff admitted at his deposition that these four comments were not racial on their face. Plaintiff also admitted the four comments, although personally hurtful, did not interfere with his performance in the workplace, which undermines Plaintiff's assertion that these statements altered the conditions of his employment. *See id*.

Although the comments by Spina-Denson and Lifto, when viewed in the light most favorable to Plaintiff, may have seemed aggressive, insulting, or subjectively hurtful to Plaintiff, they do not rise to the level of creating an objectively hostile work environment. Viewed objectively, the first and third comments cited by Plaintiff appear to be true based on this record: Participation in the ASP did not guarantee trainees a management position, and management compensation is tied, in part, to the proper reporting of mail volumes. In addition, the Court notes these comments were sporadic and isolated, and none were repeated in a harassing manner. Moreover, the statements were not racial in nature even when considered from Plaintiff's perspective.

14 - OPINION AND ORDER

Plaintiff testified at his deposition that Lifto's statement that
Plaintiff would have to "kiss a little butt" implied he would
have to supplicate in some manner to white management.  It is
undisputed, however, that Plaintiff had both white and black
managers (the record reflects Lifto is Caucasian, Spina-Denson is
mixed-heritage Caucasian and African-American, Dallas Keck is
Caucasian, and Shawneen Betha is African-American).  Without
more, Lifto's statement does not reflect racial animus or
hostility, and Plaintiff conceded at his deposition that he is
not asserting Lifto discriminated against him based on his race.

In any event, the Court concludes as a matter of law that
these statements by Lifto and Spina-Denson were neither so severe
or pervasive as to alter the conditions of Plaintiff's
employment.  *See, e.g., Vasquez v. County of Los Angeles*, 307
F.3d 884, 893 (9th Cir. 2002)(no hostile work environment when
the employee was told he had "a typical Hispanic macho attitude,"
he should work in the field because "Hispanics do good in the
field," and he was yelled at in front of others); *Kortan v. Cal.
Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000)(no hostile work
environment when a supervisor referred to females as "castrating
bitches," "Madonnas," or "Regina" in front of the plaintiff on
several occasions and directly called the plaintiff "Medea");
*Mannatt*, 339 F.3d at 798-99 (racially charged but sporadic or
isolated behavior such as calling someone a "China man" and

pulling eyes back to mock the appearance of Asians as insufficient to create a hostile work environment). *Compare McGinest*, 360 F.3d at 1114-15 (hostile work environment existed when the plaintiff's supervisors failed to maintain his automobile because of his race causing him to be involved in a serious auto accident and, in addition, subjected him to extreme racial insults, including a management-level employee calling him a "stupid nigger"); *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872-73 (9th Cir. 2001)(hostile work environment existed when a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times per day).

On this record, the Court concludes Plaintiff has not satisfied his burden to establish a *prima facie* case that the statements by Lifto and Spina-Denson created a racially hostile work environment.

**B.   Disparate Treatment.**

Plaintiff also contends Defendant removed him from the ASP because of his race and treated him differently than similarly situated employees who were not members of his protected class. Specifically, Plaintiff alleges he was treated differently during the ASP on the basis of his race as evidenced by his low evaluation scores and a lack of training. To support his claim, Plaintiff provides the Declaration of Harlan Henry, another

16 -   OPINION AND ORDER

African-American USPS employee, who attests Spina-Denson treated Henry and other African-American employees with much more scrutiny than Henry witnessed Spina-Denson treating Caucasian USPS employees.

A person suffers disparate treatment in his employment "'when he or she is singled out and treated less favorably than others similarly situated on account of race.'" *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)(quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)).  To establish a *prima facie* case of discrimination under Title VII,

> a plaintiff must offer proof [that]:
> (1) . . . the plaintiff belongs to a class of persons protected by Title VII; (2) . . . the plaintiff performed his or her job satisfactorily; (3) . . . the plaintiff suffered an adverse employment action; and (4) . . . the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff.

*Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Defendant does not dispute Plaintiff is African-American, a class protected under Title VII, nor that terminating Plaintiff's

involvement in the ASP was an adverse employment action.[2]
Defendant, however, contends Plaintiff has not made a *prima facie*
showing of element two (that Plaintiff performed his job
satisfactorily) or element four (that Defendant treated Plaintiff
differently than a similarly situated employee who is not in the
same protected class as Plaintiff).  In the alternative,
Defendant contends he has provided legitimate, nondiscriminatory
bases for removing Plaintiff from the ASP, and Plaintiff has not
met his burden to show those reasons were pretextual.

### 1.    Satisfactory Job Performance.

Defendant contends he removed Plaintiff from the ASP
for legitimate, nondiscriminatory reasons as reflected in the
OSIR evaluations and in correspondence between Lifto, Spina-
Denson, and Sharp.  As noted, Plaintiff does not dispute the
accuracy of the first two OSIR evaluations that Lifto performed
in February 2007.  Moreover, Plaintiff only contends the three
subsequent OSIR evaluations are inaccurate insofar as Plaintiff
was not adequately trained for the duties he had purportedly

---

[2] Plaintiff conceded at oral argument that terminating
Plaintiff's involvement in the ASP is the only adverse action at
issue.  Plaintiff originally asserted two additional adverse
employment actions:  (1) Defendant shifted Plaintiff's assignment
for training from Park Rose Station, which was only a few miles
from Plaintiff's home, to Oak Grove Station, which was 19.5 miles
from his home and (2) Defendant's assignment of Plaintiff to the
night shift after his removal from the ASP.  As noted,
Plaintiff's counsel stated at oral argument that Plaintiff does
not contend these actions were adverse employment actions
independent of his removal from the ASP.

performed poorly.  As the Court requested at oral argument, the
parties filed supplemental briefs as to whether a plaintiff's
claim of inadequate training relieves him of the burden of
proving satisfactory job performance to establish a *prima facie*
claim of race discrimination based on disparate treatment.

### a.   Plaintiff's Performance.

As noted, Plaintiff does not dispute the accuracy
of his first two OSIR evaluations performed by Lifto on
February 20 and 23, 2007, resulting in average scores of 1.4 and
2.3 respectively out of possible scores of four.  A score of one
indicates the employee is "often ineffective," and a score of two
indicates the employee is "sometimes effective."  By the eighth
week in the program, the ASP trainee must score above a 2.0
average to avoid review by the ASP Advisory Board as to whether
the trainee is progressing enough to justify continuation in the
program.

In his first OSIR evaluation, Lifto rated
Plaintiff "often ineffective" in seven of ten categories,
including managing employee work performance, managing day-to-day
operations, safety, office management, street management, city-
route management, and quality retail customer service.  Lifto
noted Plaintiff needed to hold mail carriers to their projected
delivery times more effectively, to submit daily paperwork on
safety observations, and to report time-wasting practices.

19 -  OPINION AND ORDER

In his second OSIR, Lifto reported Plaintiff was "sometimes ineffective" in seven of nine categories. Lifto noted Plaintiff continued to be deficient in submitting all daily reports such as "MSP" reports, making safety observations, and reporting carrier time-wasting practices.

On March 13, 2007, Lifto gave Plaintiff a 1.3 average rating in nine categories and noted Plaintiff did not satisfactorily complete his week of training. Lifto rated Plaintiff "often ineffective" in seven of nine categories and noted Plaintiff's continuing deficiency in submitting all daily reports such as MSPs, choosing an employee to evaluate his performance as instructed, documenting mail case checks and safety observations, arriving to work on time, documenting mail-carrier return times, recording employee safety violations, and documenting time-wasting practices.

On March 15, 2007, Lifto gave Plaintiff a 2.09 average rating in eleven categories and noted Plaintiff was "sometimes effective" in submitting all required daily reports such as MSPs, had not copied his trainer on case checks or safety inspections, and had not documented time-wasting practices. Lifto also found Plaintiff was "[s]till struggling with mail volume recording," Plaintiff had improperly entered volume counts, and the "[s]tation ha[d] dropped to 88% DPS because of AM volume counts."

20 - OPINION AND ORDER

On March 30, 2007, Lifto performed the fifth and
final OSIR evaluation of Plaintiff, who scored an average of 1.4
out of four.  Lifto rated Plaintiff "often ineffective" in seven
of ten categories.  Lifto noted numerous areas in which Plaintiff
had either failed to improve or had not performed adequately,
including failing to report to two management meetings on time,
failing to bring proper reports to two meetings, completion of
only one out of five daily performance reviews of employee Mike
Ferrell, running the TACS report before the DOIS report four out
of five days, failing to report 11 employees' unauthorized
overtime, failing to provide any of the daily case check reports,
reporting incorrect carrier return times, continuing to make
errors with mail-volume reporting that caused 18 hours of
additional work to correct, reporting only two out of four safety
infractions after receiving direct coaching from Spina-Denson on
those violations, and continuing to fail to report any time-
wasting practices.

Moreover, the record contains numerous
correspondences between Lifto, Spina-Denson, and Sharp that
reflect Lifto and Spina-Denson consistently discussed Plaintiff's
poor performance and provided Plaintiff with instruction on
multiple occasions as to many of his shortcomings through the
OSIRs and in performance review meetings.  The record reflects
Plaintiff also received instruction and feedback with respect to

21 -  OPINION AND ORDER

errors in mail-volume counting and reporting, improper reporting
of mail-carrier projected return times, a failure to follow
direct instructions to clock out mail-carriers, failure to count
all mail before running volume reports, repeated failure to
follow a two-step process of running the TACS report before
running the DOIS report, failure to investigate an obvious
reporting error, failure to follow up with mail-carriers who
missed projected return times, and failure to perform required
employee evaluations.

          In response to Plaintiff's complaint of March 14,
2007, about his evaluation scores, Sharp emailed Plaintiff to
address his concerns and suggested six specific additional
practices to help Plaintiff improve his evaluation scores:
(1) review MSP scans with three carriers daily, (2) identify an
employee to track daily performance, (3) perform daily case
checks and submit written findings to Lifto, (4) talk with mail
carriers about their projected return times, (5) try to arrive 15
minutes early for a shift, and (6) document one time-wasting
practice per day.  Moreover, Sharp suggested Plaintiff follow up
with Lifto three to four times per day to report his progress on
these items.

          Thus, the record contains substantial evidence
that Plaintiff was not performing his job satisfactorily and that
he was receiving feedback as to areas of needed improvement.

**b.   Lack of Training.**

Plaintiff asserts Lifto and Spina-Denson did not provide him with adequate training to be successful in the ASP. As noted, the Court requested the parties to file supplemental briefs as to whether Plaintiff's complaints that he did not receive adequate training to enable him to perform satisfactorily relieves him of the burden to prove the second element of a race-discrimination claim based on disparate treatment.  In his supplemental brief, Plaintiff conceded no controlling precedent exists in the Ninth Circuit.  The Court, however, notes the *McDonnell Douglas* factors are flexible in order to accommodate a wide range of possible facts in each particular instance, and, therefore, the Court will consider Plaintiff's evidence that his training was inadequate when determining whether Plaintiff has established a *prima facie* case with respect to his disparate-treatment claim.  *See McGinest*, 360 F.3d at 1123 n.17.

Plaintiff makes few arguments in his Response to Defendant's Motion to counter Defendant's numerous complaints about Plaintiff's poor performance.  At his deposition, Plaintiff stated he was not trained properly on TACS, was not provided the proper forms to report case checks, and was not provided with examples of time-wasting practices that Plaintiff should report each day.  The record, however, reflects Plaintiff received substantial training and instruction between September 2006 and

April 2007, and Plaintiff was in management training for most of
that time.  As noted, Plaintiff participated in the classroom
portion of the ASP twice.  In addition, Plaintiff received a
month of 204b training with Shaver and Bowers, which Plaintiff
admitted was critical to an employee's success in the ASP.

At his deposition Plaintiff stated he sought
additional training from Lifto for the TACS program and that he

> told her from the beginning that I don't have
> any TACS experience.  I haven't 204b'ed — I
> only 204b'ed a short time.  I trained this an
> even shorter time.  I said, and neither time
> have they really sat down and shown me TACS.
> I said, if you want me to learn TACS, you are
> going to have to dumb it down to me.  Because
> I never 204b'ed, I don't have any experience
> with it or anything else.

This statement, however, is contradicted by Plaintiff's training
while in the 204b program.  At his deposition Plaintiff stated
that training included instruction on MSP reports, DOIS, CSDRS,
reporting and evaluating mail-carrier projections and overages,
and exposure to TACS while shadowing Bowers.  Plaintiff testified
Bowers would take extra time to "go back and explain why he did
certain things and why certain things were done a certain way."
Plaintiff also admitted Bowers and Shaver were very good trainers
and managers who worked well with him, gave him good experience,
and taught him the job.

Significantly, Plaintiff did not offer any
evidence that other ASP or 204b candidates were trained

differently than he was trained.  In fact, Plaintiff testified at
his deposition that he viewed the ASP as having an across-the-
board deficiency in training due to a low ratio of coaches to
trainees that affected all candidates equally regardless of race.
At oral argument Plaintiff's counsel stated there were not any
available comparitors because Plaintiff was the only ASP
candidate at the Oak Grove Station.  The record, however,
reflects there were 15 ASP candidates in the Portland area during
the time Plaintiff was being trained at the Oak Grove Station who
may have provided a basis for assessing the relative quantity and
quality of training received by Plaintiff.

On this record, however, the Court may only
speculate as to whether Plaintiff's training was on par with that
of other ASP trainees.  Moreover, as noted, Plaintiff conceded
Lifto did not refuse to train Plaintiff on the basis of his race.
Thus, Plaintiff's subjective complaints that he did not receive
adequate training ring hollow in light of Defendant's numerous
evaluations and correspondence that demonstrate Defendant
provided Plaintiff with substantial feedback and training in an
effort to overcome Plaintiff's failure to make appropriate
progress in the ASP.

In any event, even if Plaintiff were persuasive in
arguing that a lack of training removes the requirement of
proving element two, Plaintiff still fails to show that he

25 - OPINION AND ORDER

satisfactorily performed some of those aspects of his job that
did not depend on formalized training or for which he was
adequately trained.  For example, Plaintiff conceded, *inter alia*,
that he was late to meetings, failed to review employees as
instructed, and struggled with reporting proper mail volumes.

Based on the foregoing, the Court concludes on this
record that Plaintiff has not met his burden to show that he
performed his job satisfactorily.

### 2.   **Pretext**.

Even if Plaintiff had established a *prima facie* case of
race discrimination, Defendant maintains Plaintiff has not shown
Defendant's legitimate, nondiscriminatory reasons for removing
Plaintiff from the ASP were a mere pretext for racial
discrimination.  As noted, when a defendant produces evidence of
a nondiscriminatory basis for an adverse employment action, "the
presumption of discrimination drops out of the picture and the
plaintiff may defeat summary judgment by satisfying the usual
standard of proof required in civil cases under Fed. R. Civ. P.
56(c). . . . [that] a reasonable jury could conclude by a
preponderance of the evidence that the defendant undertook the
challenged employment action because of the plaintiff's race."
*Cornwell*, 439 F.3d at 1028-29.

Although Plaintiff contends the standard of proof at
this stage remains minimal and that the motive of an employer is

26 -  OPINION AND ORDER

a pure question of fact for the jury, Plaintiff does not identify any direct evidence in the record to support even an inference of pretext by Defendant.  On the other hand, there is significant evidence in the record to support Defendant's stated rationale for removing Plaintiff from the ASP.  The Court notes the Ninth Circuit has held even after a defendant has provided a legitimate, nondiscriminatory reason for an adverse employment action, the plaintiff "may rely on circumstantial evidence, which we previously have said must be 'specific' and 'substantial' to create a genuine issue of material fact."  *Id.* at 1029.

### a.    **Specific and Substantial Evidence.**

In *Cornwell v. Electra Central Credit Union*, the Ninth Circuit held when a plaintiff depends on circumstantial evidence to rebut a defendant's nondiscriminatory explanation for its actions, such evidence must be "specific and substantial" to defeat summary judgment.  439 F.3d at 1029 n.9 (citing five Ninth Circuit opinions that uphold the "specific and substantial" circumstantial-evidence showing for proof of employer's pretense).  In *Cornwell*, however, the Ninth Circuit expressed some concern that the "specific and substantial" circumstantial-evidence standard may conflict with the Ninth Circuit's holding in *McGinest* and the Supreme Court's holding in *Desert Palace, Inc. v. Costa*:

> In view of the Supreme Court's
> recognition in *Costa* that circumstantial

27 -  OPINION AND ORDER

> evidence may be "more certain, satisfying and
> persuasive than direct evidence," and
> *McGinest*'s holding that a disparate treatment
> plaintiff can defeat a motion for summary
> judgment relying on circumstantial evidence,
> we conclude that in the context of summary
> judgment, Title VII does not require a
> disparate treatment plaintiff relying on
> circumstantial evidence to produce more, or
> better, evidence than a plaintiff who relies
> on direct evidence.
>
> Although there may be some tension in
> our post-*Costa* cases on this point-several of
> our cases decided after *Costa* repeat the
> *Godwin* requirement that a plaintiff's
> circumstantial evidence of pretext must be
> "specific" and "substantial"--this panel may
> not overturn Ninth Circuit precedents in the
> absence of "intervening higher authority"
> that is "clearly irreconcilable" with a prior
> circuit holding, see *Miller v. Gammie*, 335
> F.3d 889, 893 (9th Cir. 2003)(*en banc*),
> because that power is generally reserved to
> our *en banc* panels.

*Id.* at 1030-31 (citations omitted).

The Court notes the Ninth Circuit has continued to rely

on the "specific and substantial" test after *Cornwell* with little

discussion or controversy. *See, e.g.*, *Nillson v. City of Mesa*,

503 F.3d 947, 953-55 (9th Cir. 2007); *Metoyer v. Chassman*, 504

F.3d 919, 930-31 (9th Cir. 2007). In *Davis v. Team Electric Co.*,

however, the Ninth Circuit again raises concerns about the

consistency between *Cornwell*, *Costa*, and *McGinest*:

> In *Cornwell* we relied on the Supreme Court's
> decision in *Costa* to conclude that "in the
> context of summary judgment, Title VII does
> not require a disparate treatment plaintiff
> relying on circumstantial evidence to produce

more, or better, evidence than a plaintiff
who relies on direct evidence." *Cornwell*, 439
F.3d at 1030; see also *McGinest*, 360 F.3d at
1122 ("circumstantial and direct evidence
should be treated alike"). We have also held
in numerous other cases since *Costa* that a
plaintiff's circumstantial evidence of
pretext must be "specific" and "substantial."
*See, e.g., Dominguez-Curry v. Nev. Transp.*
Dep't, 424 F.3d 1027, 1038 (9th Cir. 2005).

520 F.3d 1080, 1091 n.6 (9th Cir. 2008).  The Ninth Circuit,

however, did not resolve any potential conflict between these

cases and did not abrogate *Cornwell*.  Moreover, the Ninth Circuit

recently cited *Cornwell's* "specific and substantial" standard

favorably in *E.E.O.C. v. The Boeing Co.* and did not repeat the

concerns raised in *Cornwell* or *Davis*.  577 F.3d 1044, 1049-50

(9th Cir. 2009).

Thus, there is a substantial body of Ninth Circuit

decisions before and after *Cornwell* in which the court allows a

Plaintiff to rely on "specific and substantial" circumstantial

evidence to rebut a defendant's nondiscriminatory explanation for

taking an adverse employment action.

### b.    Plaintiff's Evidence.

In response to Defendant's arguments, Plaintiff

merely asserts the circumstantial evidence he relies on to

establish his *prima facie* claim of disparate treatment is

sufficient to create an issue of fact as to a pretextual motive

by Defendant for removing Plaintiff from the ASP and, therefore,

is sufficient to defeat summary judgment.  Plaintiff cites *Wallis*

*v. J.R. Simplot, Co.,* 26 F.3d 885, 890 (9th Cir. 1994), to

support his position.  In *Wallis*, however, the Ninth Circuit

held:

> [T]he mere existence of a *prima facie*
> case, based on the minimum evidence necessary
> to raise a *McDonnell Douglas* presumption,
> does not preclude summary judgment.  Indeed,
> in *Lindahl v. Air France*, 930 F.2d 1434, 1437
> (9th Cir.1991), we specifically held "a
> plaintiff cannot defeat summary judgment
> simply by making out a prima facie case."
> "[The plaintiff] must do more than establish
> a prima facie case and deny the credibility
> of the [defendant's] witnesses."  *Schuler v.
> Chronicle Broadcasting Co.*, 793 F.2d 1010,
> 1011 (9th Cir. 1986).  In response to the
> defendant's offer of nondiscriminatory
> reasons, the plaintiff must produce
> "specific, substantial evidence of pretext."
> *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393
> (9th Cir. 1983).  In other words, the
> plaintiff "must tender a genuine issue of
> material fact as to pretext in order to avoid
> summary judgment."  *Id*.
>
> Wallis' assertion, that once a plaintiff
> makes out a prima facie case summary judgment
> is impermissible, is untenable.  His position
> would require a trial in every discrimination
> case, even where no genuine issue of material
> fact exists concerning the legitimacy of the
> employer's nondiscriminatory reasons.  Such a
> result is not compelled by *Sischo-Nownejad*
> and would be contrary to other cases
> affirming summary judgment where the
> plaintiff failed to produce evidence of
> intentional discrimination.

*Id.*

In his Response, Plaintiff does not make any

argument as to why Defendant's reasons for removing Plaintiff

from the ASP were merely pretext.  Although Plaintiff cites Harlan Henry's Declaration as evidence that Spina-Denson treats African-American employees with more scrutiny and with less cordiality than Caucasian employees, Plaintiff does not provide either specific or substantial evidence that the motivations of Lifto, Spina-Denson, Sharp, and the ASP Advisory Board or their reasons for removing Plaintiff from the ASP were discriminatory. *See id.* at 892.

Accordingly, on this record the Court concludes Plaintiff has failed to provide sufficient evidence to establish that Defendant's reasons are not credible or are more likely than not a pretext for discrimination.

In summary, Plaintiff has not provided sufficient evidence to show "'that a discriminatory reason more likely motivated the employer' to make the challenged employment decision." *Cornwell*, 439 F.3d at 1028 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  Thus, the Court concludes on this record that a reasonable jury could not "conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's race." *See Cornwell*, 439 F.3d at 1028-29.

## II.  Retaliation.

Plaintiff contends he engaged in protected activity by speaking out at the 2005 roundtable held by USPS and the Western

31 - OPINION AND ORDER

Regional Vive President and by informing Lifto, Sharp, Keck, Collins, and Spina-Denson that he was being evaluated unfairly. Plaintiff alleges Defendant retaliated against him for his complaints of discrimination by ensuring he failed in the ASP.

"To make out a *prima facie* case of retaliation, [a plaintiff] must establish 'that she acted to protect her Title VII rights, that an adverse employment action was thereafter taken against her, and that a causal link existed between those two events.'" *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112 (9th Cir. 2000)(quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994)). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show

> (1) he engaged in a protected activity,
> (2) the defendant subjected the plaintiff to
> an adverse employment action, and (3) a
> causal link exists between the protected
> activity and the adverse action.

*Manatt*, 339 F.3d at 800 (quotation omitted). Complaining about race discrimination to a supervisor is a protected activity. *Id.* at 800 n.8. If a plaintiff has established a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* (citation omitted). If the defendant then "articulates such a reason, [the plaintiff] bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id.* (quotation omitted).

32 - OPINION AND ORDER

Defendant concedes it took an adverse employment action against Plaintiff when it removed him from the ASP, but Defendant contends Plaintiff has not satisfied the first and third elements required to establish his *prima facie* case.

### A.   Protected Activity.

Defendant contends Plaintiff did not show that he engaged in protected activity by complaining about "unfair" treatment to Lifto, Spina-Denson, Sharp, Keck, and Collins.  Defendant contends such statements do not fairly put the USPS on notice that Plaintiff believed Defendant was unlawfully discriminating against him.  Defendant cites the unpublished case of *Fundukian v. United Blood Services* in which the plaintiff's general complaints about racial attitudes and minority hiring practices were insufficient to constitute protected activity because such complaints would not reasonably be interpreted as complaints of racial discrimination.  No. 00-15949, 2001 WL 1019724, at *2-*3 (9th Cir. Aug. 31, 2001).

In *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*, the Supreme Court addressed the type of "opposition" to discriminatory practices that suffice to trigger protection of the statute.  555 U.S. ___, 129 S. Ct. 846 (2009).  The Court broadened the application of Title VII protection in *Crawford* and held an employee need not instigate complaints of discrimination, but may oppose such practices even

33 - OPINION AND ORDER

by merely responding to employer inquiries. *Id.* at 851.

Without deciding whether Plaintiff's complaint of "unfair" treatment alone constitutes protected activity, the Court concludes Plaintiff's complaints of racial discrimination to his superiors at the 2005 roundtable coupled with his complaints of unfair treatment in his performance evaluations are sufficient in light of *Crawford* to constitute protected activity under Title VII.

### B. Causation.

Defendant next contends Plaintiff has not made any reasonable argument that Plaintiff's removal from the ASP was causally connected to his complaints regarding race discrimination.

Plaintiff, in turn, reiterates minimal evidence is required to establish a *prima facie* case of retaliation and notes the temporal proximity between the complaints of discrimination and the adverse employment action is generally sufficient to permit an inference of causation; *i.e.*, temporal proximity alone can support a causal inference when the period between the protected activity and the alleged retaliation is short. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity," but 18 months was too long to infer causation). *See also*

*Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)(causation could be inferred when an adverse employment action took place less than three months after protected activity); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)(timing alone is insufficient to support a claim of retaliation when almost two years had passed between the protected activity and the adverse employment action).  Plaintiff's reliance solely on temporal proximity as proof of causation, therefore, is problematic.  The roundtable took place in 2005 and Plaintiff was removed from the ASP program in April 2007, which does not establish a close nexus between the protected activity and the alleged retaliatory conduct.  Moreover, between the 2005 roundtable and Plaintiff's removal from the ASP in 2007, Defendant provided Plaintiff with multiple management-training opportunities, which seriously undermines the inference of retaliation based on proximity.  In September 2006 Plaintiff was assigned to his first training in the ASP.  After two weeks of classroom training, Plaintiff did not pass the written examination to be eligible for further participation in the program.  Plaintiff was then accepted into the 204b Supervisor training program and was assigned to train with Lance Shaver and Troy Bowers, whom Plaintiff and Betha described as experienced managers and good trainers.  Plaintiff trained with Bowers and Shaver for three or four weeks at the Creston Station in October and November 2006.  Plaintiff had

35 -  OPINION AND ORDER

additional 204b training in December 2006 at the Cherry Creek
Station.  In January 2007 Plaintiff was assigned to his second
training in the ASP.  After his practical 204b experience,
Plaintiff passed his written examination and received an
additional five weeks of training in the ASP before Defendant
removed him from the program.

At his deposition, Plaintiff asserted a wide-ranging
conspiracy theory in which high-level USPS management conspired
to ensure that he failed in the ASP.  When questioned at his
deposition about the evidence to support his theory, Plaintiff
stated:  "I don't have no written evidence, no photographs.  I
don't have anything.  It's just how I feel."  Plaintiff made this
admission twice in his deposition.  As noted, however,
Plaintiff's subjective beliefs are an insufficient basis for a
Title VII claim for retaliation.  *See Cornwell*, 439 F.3d at 1028
n.6.

At oral argument, Plaintiff maintained Defendant began
assembling a "mountain of evidence" against Plaintiff after he
complained about unfair treatment.  Plaintiff contends
Defendant's conduct is evidence of retaliation.  The record
reflects Plaintiff first raised concerns about his OSIR scores on
March 14, 2007, in an email to Sharp.  As noted, Lifto had
evaluated Plaintiff on three occasions and had noted numerous
areas in which Plaintiff was rated "often ineffective" prior to

36 - OPINION AND ORDER

that date.  In addition, Lifto also scored Plaintiff as only
"sometimes effective" in numerous similar categories and noted
several areas in which Plaintiff failed to meet expectations.
Both Lifto and Spina-Denson repeated nearly all of these concerns
about Plaintiff's performance in the weeks that followed
Plaintiff's complaints about his OSIR scores.  The consistency of
the criticisms of Plaintiff's performance by his trainer and
coach before and after Plaintiff's complaints undermines
Plaintiff's argument that Defendant merely made up such criticism
after Plaintiff raised concerns over his OSIR scores.  Moreover,
the fact that Plaintiff does not assert Lifto was motivated by
retaliation when she reporting Plaintiff's lack of progress
undermines any causal link between Plaintiff's complaints of
discrimination and his removal from the ASP.

    The Court concludes on this record that Plaintiff has not
shown there is sufficient evidence to create a jury question as
to causation as required to state a claim for retaliation under
Title VII.

  **C. Pretext.**

    Finally, Defendant maintains even if Plaintiff had satisfied
each of the elements to establish a *prima facie* case of
retaliation, he must overcome Defendant's nondiscriminatory
explanation of Plaintiff's removal from the ASP.  *See Manatt*, 339
F.3d at 800.  Plaintiff, however, fails to articulate any

37 - OPINION AND ORDER

argument or identify any evidence in the record that establishes a reasonable juror could conclude by a preponderance of the evidence that Defendant's explanation for removing Plaintiff from the ASP was a pretext for retaliating against him because of his complaints of discrimination.  In any event, Plaintiff's assertion of pretext related to his retaliation claim fails for the same reasons as his assertion of pretext related to his disparate-treatment claim.

The Court, therefore, concludes on this record that Plaintiff has not established a *prima facie* case of retaliation under Title VII nor satisfied his burden to establish that Defendant's legitimate, nondiscriminatory bases for removing Plaintiff from the ASP are not credible or are pretext for retaliation.

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendant's Motion (#27) for Summary Judgment in its entirety and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 29th day of March, 2010.

ANNA J. BROWN
United States District Judge

38 - OPINION AND ORDER